UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

PHILLIP JEROME GARDNER,

      Plaintiff,

- against -

C.O. DADDEZIO and SGT. HALLER,

      Defendants.
------------------------------------------------------- X

**OPINION AND ORDER**

07 Civ. 7201 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/5/08

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.  INTRODUCTION

    Phillip Jerome Gardner, proceeding pro se, brings this action against two New York State Correction Officers pursuant to 42 U.S.C. § 1983 ("section 1983"). Gardner alleges that Correction Officer ("CO") D'Addezio, acting out of a personal animus springing from an earlier incident, selectively enforced prison regulations pertaining to the dreadlocks that Gardner wore. His Complaint appears to allege a violation of the Equal Protection Clause of the United States Constitution. He also alleges that Sergeant Haller ordered him to cut off his dreadlocks. Defendants now move for summary judgment on the grounds, *inter alia*, that Gardner has not exhausted administrative remedies against Haller as required by the Prison Litigation Reform Act ("PLRA"), and that the undisputed

-1-

facts of the case cannot support a claim against D'Addezio. For the reasons set forth below, defendants' motion is granted.

## II. FACTS

Phillip Jerome Gardner is an inmate at the Sullivan Correctional Facility, a New York state prison.[1] He claims to be of African-American and Cherokee Indian descent[2] and is registered as a Muslim.[3] Prior to filing this suit, Gardner wore his hair in dreadlocks.[4] Gardner's reasons for wearing dreadlocks were admittedly personal and not religious.[5]

On November 1, 2006, Gardner was involved in an incident that resulted in his confinement to the Special Housing Unit ("SHU") for ninety days.[6]

---

[1] Complaint ("Compl.") at 1.

[2] 4/28/08 Deposition of Phillip Gardner ("Gardner Dep."), Ex. D to Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem."), at 15.

[3] *See* Defendants' Statement of Material Facts Which Are Not in Dispute ("Def. 56.1") at ¶ 7. *See also* Gardner Dep. at 31-32. Plaintiff filed no papers in opposition to the motion.

[4] Def. 56.1 at ¶¶ 24-27. Gardner cut his dreadlocks off at some point between May 11, 2007 and April 28, 2008. *See id.*

[5] *See* Def. 56.1 at ¶ 9.

[6] *Id.* at ¶ 10.

Correction Officer Pitcher was allegedly punched in the chest by Gardner.[7]

After the incident with Pitcher, there were two occasions in which D'Addezio cited Gardner in misbehavior reports for failing to wear his dreadlocks in conformity with prison grooming standards.[8] Although Gardner suggests in his Complaint that CO D'Addezio wrote the misbehavior reports in retaliation for the alleged attack on CO Pitcher,[9] there is undisputed evidence that shows this was not the case.[10] Instead, D'Addezio wrote the misbehavior reports because Gardner allowed his dreadlocks to hang loose in violation of prison grooming standards.[11] At the subsequent disciplinary hearings, Gardner received penalties of twenty days' loss of privileges and ten days in the SHU.[12]

Two days after the first misbehavior report, Gardner filed a grievance alleging that "[e]ver[] since I got out of the [SHU], C.O. D'Addezio [has] been

---

[7] *Id.*

[8] *See id.* at ¶¶ 15, 16.

[9] *See* Compl. at 9 ("[D'Addezio] and Pitcher are friends. Since I been out of the [SHU], [D'Addezio] has been harassing me.").

[10] *See* Def. 56.1 at ¶ 17.

[11] *See id.* at ¶ 18.

[12] *See id.* at ¶¶ 22, 23.

harassing me about my hair."[13] He filed another grievance soon after his second misbehavior report, alleging that he was "harassed by [D'Addezio] concerning my dreads" and that D'Addezio told him "you are going to get your hair cut."[14] Both grievances were denied.[15] Gardner appealed to the Inmate Grievance Program's Central Office Review Committee ("CORC") and this, too, was denied.[16]

One of the two grievances – it is not clear which – was investigated by Sergeant Roy Haller. Gardner alleges that Sergeant Haller "gave me a direct order to cut my dreads or to comb them out or go to the [SHU]."[17] Gardner then

---

[13] 4/27/07 Grievance of P. Gardner ("First Grievance"), Ex. L to Def. Mem. at 1.

[14] 5/7/07 Grievance of P. Gardner ("Second Grievance"), Ex. M to Def. Mem. at 1.

[15] *See* 5/14/07 Inmate Grievance Program Report Denying Grievance No. SUL/17218/07 ("First Denial"), Ex. L to Def. Mem. at 2; 5/14/07 Inmate Grievance Program Report Denying Grievance No. SUL/17233/07 ("Second Denial"), Ex. M to Def. Mem. at 2.

[16] *See* 6/6/07 CORC Report ("CORC Rep."), Ex. M to Def. Mem. at 3. Gardner appealed only the Second Grievance, pertaining to the May 4, 2007 misbehavior report. *See id.* The First Grievance, filed after the earlier misbehavior report, was never appealed to CORC. *See* 3/6/08 e-mail of Chris X. Lindquist Listing Plaintiff's Appeals to CORC ("Lindquist e-mail"), Ex. K to Def. Mem.

[17] Compl. at 3.

-4-

cut off his dreadlocks.[18] Sergeant Haller states that he did not order Gardner to cut off his dreadlocks; he only ordered Gardner to come into compliance with prison grooming standards.[19] Regardless of what Sergeant Haller actually said, Gardner apparently never filed a grievance against him – and if he did file a grievance he did not appeal it to CORC.[20] No evidence suggests that Gardner brought Sergeant Haller's alleged misconduct to CORC's attention when appealing the denial of his second grievance: his appeal statement refers only to the alleged harassment by CO D'Addezio and CORC's final report does not address any alleged misconduct by Sergeant Haller.[21]

Gardner filed this lawsuit on June 29, 2007. He alleges that the harassment by CO D'Addezio caused mental and emotional stress and seeks damages of one million dollars, plus an additional one thousand dollars for each of

---

[18] *See id.*

[19] *See* Def. 56.1 at ¶ 25 (citing 7/2/08 Interrogatory of Sergeant Roy Haller, Ex. F to Def. Mem., at 6, 7).

[20] *See* Lindquist e-mail. The Lindquist e-mail lists all of Gardner's grievances that had been appealed to CORC as of March 6, 2008. Only one such grievance was filed after the grievance alleging harassment by CO D'Addezio. That last grievance was filed October 29, 2007, and is titled "Cell Door Closed Too Fast." Sergeant Haller's interview with Gardner occurred on May 11, 2007. *See* Compl. at 3.

[21] *See* Second Denial; CORC Rep.

the 25-to-30 dreadlocks that he cut off.²²

## III. LEGAL STANDARDS

When the non-moving party "'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'"²³ If the movant does not meet its burden of production, then the court must deny summary judgment even if the non-movant does not oppose the motion.²⁴ Moreover, the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement.²⁵ The court must be satisfied that the movant's assertions are supported by the evidence in the record.²⁶ However, in ascertaining that such evidence exists, a court "need

---

²² *See* Compl.

²³ *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

²⁴ *See id.* (citing *Amaker*, 274 F.3d at 681).

²⁵ *See id.*

²⁶ *See id.* (citing *Giannullo v. City of NY*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

not search the entire file in resolving a summary judgement motion[, but] may confine its review to the evidence cited by the parties."[27]

In sum, "[w]here, as here a nonmoving *pro se* party has failed to submit papers in opposition to a motion for summary judgment, summary judgment may be granted as long as the Court is satisfied that the undisputed facts 'show that the moving party is entitled to a judgment as a matter of law,' and plaintiff has received notice that failure to submit evidence in opposition may result in dismissal of his case."[28]

A. **Exhaustion of Administrative Remedies**

The PLRA requires that a prisoner exhaust all administrative remedies before bringing an action regarding prison conditions.[29] The PLRA's

---

[27] *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 618 (S.D.N.Y. Jan. 3, 2008) ("[W]here a party against whom summary judgment is sought fails entirely to respond to the motion, the court need ensure only that the averments in the movant's Rule 56.1 statement are supported by evidence and show an absence of a genuine issue for trial.").

[28] *Blackett v. Pathmark Stores, Inc.*, No. 01 Civ. 6913, 2002 WL 31385817, at *2 (S.D.N.Y. Oct. 21, 2002) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)). Here, plaintiff has received notice of defendants' motion for summary judgment, and of the consequences of failing to respond to such a motion, as required by Local Rule 56.2. *See* 7/3/08 Local Rule 56.2 Notice to Pro Se Litigant Opposing Motion for Summary Judgment.

[29] *See* 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other

exhaustion requirement is mandatory.[30] Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[31] Furthermore, the United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[32]

Where an inmate challenges conditions in a New York State prison, full exhaustion usually requires compliance with all three steps of the State's grievance procedure.[33] *First*, the inmate must file a complaint within twenty-one calendar days of the incident about which he or she is complaining, after which the

---

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[30] *See Porter v. Nussle,* 534 U.S. 516, 524 (2002).

[31] *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir. 2001) (quotation marks and citation omitted, emphasis in original).

[32] *Porter,* 534 U.S. at 532.

[33] *See Amador v. Superintendants of the Dep't of Corr. Servs.,* No. 03 Civ. 650, 2007 WL 4326747, at *2 (S.D.N.Y. Dec. 4, 2007) ("Formal exhaustion in New York generally requires compliance with the DOCS's three-step grievance and appeal procedure outlined in the Inmate Grievance Program."); *Veloz v. New York,* 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004) ("Complete exhaustion of the . . . administrative remedies through the highest level for each claim is required.").

Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days to resolve the matter informally or, if that is unsuccessful, to hold a hearing.[34] After a hearing, the IGRC then has two working days to reach a decision.[35] *Second*, after an unsuccessful decision, the grievant may file an appeal with the superintendant of the facility.[36] *Third*, if the inmate is not satisfied with the superintendant's answer, he may then appeal to CORC.[37] Though the first step may be skipped where an inmate alleges harassment,[38] the final step in the grievance procedure always remains the appeal to CORC.[39] Thus, only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted.

An inmate who has filed a grievance may later bring suit against an individual who was not specifically named in the grievance, but only so long as

---

[34] *See* 7 New York Code, Rules and Regulations ("N.Y.C.R.R.") §§ 701.5(a), 701.5(b).

[35] *See id.* at § 701.5(b)(3).

[36] *See id.* at § 701.5(c).

[37] *See id.* at § 701.5(d).

[38] *See id.* at § 701.8.

[39] *See id.* at § 701.8(h).

the prison grievance procedures do not require that all such persons be named.⁴⁰ The purpose of a grievance is "'to alert prison officials of a problem, not to provide personal notice to a particular official that he or she may be sued.'"⁴¹

Whether or not a grievance must name all the persons involved in an alleged violation "will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."⁴² New York regulations provide that "[i]n addition to the grievant's name, department identification number, housing unit, program assignment, etc., [a] grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, *i.e.* specific persons/areas contacted and responses received."⁴³ This language has been interpreted to mean that "there is no requirement that an inmate *must* identify every individual by name in order to exhaust his remedies as to those

---

⁴⁰ *See Jones v. Bock*, 127 S. Ct. 910, 923 (2007) ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.").

⁴¹ *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

⁴² *Id.*

⁴³ 7 N.Y.C.R.R. § 701.5(a)(2).

individuals[.]"⁴⁴

However, "the mere fact that the plaintiff filed *some* grievance . . . does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to the grievance."⁴⁵ For instance, "[i]f a grievance alleges nothing more than maltreatment at the hands of a particular defendant, that grievance is not sufficient to exhaust all administrative remedies as against other defendants later claimed to have been aware of the systematic problems and who failed to correct them."⁴⁶ The question for this Court is "whether [the] plaintiff's grievance sufficiently alerted prison officials that he was alleging some wrongdoing beyond" that alleged against the person or persons specifically named in the grievance.⁴⁷

If a prisoner has failed to exhaust his administrative remedies, a court must determine: 1) whether such remedies were unavailable, 2) whether the defendants forfeited an exhaustion defense by failing to raise it, or should be

---

⁴⁴ *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005) (interpreting identical language in former 7 N.Y.C.R.R. § 701.7(a)(1)(i), emphasis in original).

⁴⁵ *Id.* (emphasis in original).

⁴⁶ *Amador*, 2007 WL 4326747, at *8.

⁴⁷ *Turner*, 376 F. Supp. 2d at 325.

estopped from raising such a defense because they took "actions inhibiting the inmate's exhaustion of remedies," and 3) whether any "special circumstances" mitigate in the plaintiff's favor.[48] An affirmative answer to any of these inquiries may result in the plaintiff being excused from the exhaustion requirement.[49]

**B.     Equal Protection**

A plaintiff who complains of selective enforcement by a defendant, and that the defendant was motivated by a malicious intent to injure the plaintiff, is stating a claim under the Equal Protection Clause.[50] The plaintiff must show that he was treated differently from other persons similarly situated and that such treatment "'was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious *or bad faith intent to injure a person.*'"[51] Although personal animus may be an improper consideration for purposes of an Equal Protection claim, "cases predicating

---

[48]    *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).

[49]    *See id.*

[50]    *See Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (recognizing an Equal Protection claim where "plaintiffs argue that defendants deliberately treated them differently from other similarly situated [persons] because of malicious intent to injure them").

[51]    *Id.* (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)) (emphasis supplied in *Bizzarro*).

constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are 'lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly defined rules to apply.'"[52] It is clear, however, that a plaintiff cannot prove that a defendant acted out of personal dislike merely by showing that the defendant was angry with the plaintiff.[53] Nor can the mere fact that disciplinary measures were taken against a plaintiff provide evidence that the defendant was motivated by improper considerations.[54]

## IV. DISCUSSION

Gardner's claim against Sergeant Haller must be dismissed because Gardner failed to bring allegations against Haller before CORC and thus failed to exhaust his administrative remedies. Gardner's claim against CO D'Addezio must also be dismissed because the undisputed facts foreclose any finding that Gardner received disparate treatment based on impermissible considerations.

---

[52] *Id.* (quoting *LeClair*, 237 F.2d at 608).

[53] *See id.* at 87.

[54] *See id.*

## A. Gardner Failed to Exhaust His Administrative Remedies Against Sergeant Haller

Gardner's claims against Sergeant Haller must be dismissed because Gardner did not exhaust his administrative remedies as to Haller. Gardner has not contested defendants' assertions that he failed to pursue administrative remedies with respect to Sergeant Haller. Uncontested evidence shows that he could not have exhausted all his administrative appeals with regard to a grievance against Sergeant Haller.[55]

While a grievance need not name every individual involved in an alleged violation of a prisoner's rights, it would be unreasonable to find that prison officials were alerted to a problem involving Sergeant Haller merely because he investigated the grievance against CO D'Addezio. There is always a possibility that a person investigating a grievance may end up violating the

---

[55] Between May of 2007, when he appealed his second grievance against CO D'Addezio to CORC, and March of 2008, Gardner pursued only one other grievance to the end of the administrative process. *See* Lindquist e-mail. All that is known about the other grievance, which was resolved last December, is that it was titled "Cell Door Closed Too Fast." *Id.* "The title to [this] grievance . . . does not remotely suggest [that] plaintiff's allegations against Sgt. Haller" were contained therein. Def. Mem. at 17. Moreover, the "Cell Door" grievance was filed on October 29, 2007, more than five months after Gardner's May 11, 2007 interview with Sergeant Haller. *See* Compl. at 3. In New York State, an inmate must file a grievance within twenty-one calendar days of the incident about which he or she is complaining. *See* 7 N.Y.C.R.R. § 701.5(a).

grievant's rights, but this possibility cannot be said to alert prison officials to a specific problem. Even if a separate grievance against Haller was not necessary under the circumstances, Gardner should have brought Haller's alleged misconduct to the attention of prison authorities as he was pursuing his administrative appeals. Nothing in his appeal statement or in CORC's final determination suggests that he did so.[56]

There is no basis to excuse Gardner from his failure to pursue his administrative remedies against Haller. Gardner never alleges that such remedies were unavailable. Haller has raised the defense of exhaustion and there is no evidence that Haller took action to prevent Gardner from pursuing administrative remedies. Finally, there are no special circumstances here that would excuse Gardner from his obligation to pursue a grievance against Haller. The claim against Haller is therefore dismissed.

---

[56] *See* Second Denial; CORC Rep.

## B. Gardner Has Not Proffered Evidence to Support an Equal Protection Claim Against CO D'Addezio

Gardner's equal protection claim against CO D'Addezio fails because undisputed evidence shows that CO D'Addezio was not motivated by a malicious intent to injure him. The defendants assert in their Rule 56.1 Statement that "neither . . . misbehavior report[ was] written by CO D'Addezio as a quid pro quo for plaintiff's disciplinary conviction for assaulting CO Pitcher, nor did CO D'Addezio have a motive to harass plaintiff for any other reason."[57] In support of this assertion, defendants cite CO D'Addezio's answer to one of Gardner's interrogatories, in which D'Addezio stated that he was not motivated by a desire to harm Gardner in retaliation for the incident involving Officer Pitcher.[58] Because I need not look beyond the evidence cited by defendants to conclude that the assertions in their 56.1 Statement are supported by the record, Gardner has raised no material issue of fact as to whether CO D'Addezio was motivated by an improper consideration. Accordingly, plaintiff's complaint against CO D'Addezio

---

[57] Def. 56.1 at ¶ 17.

[58] 4/10/08 Interrogatory of CO Joseph D'Addezio, Ex. E to Def. Mem., at 13. Gardner asked whether "all of this [h]arassing is . . . Tic for Tac [sic.] [because] Mr. Gardner supposedly punched C.O. Pitcher in his chest [with] Mr. Gardner's right fist." *Id.* Subject to various objections, CO D'Addezio responded "that he did not harass plaintiff nor was he motivated by the alleged [motive] or any other reason to harass plaintiff." *Id.*

is also dismissed.

## V. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to close this motion [Document #22 on the docket] and this case.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
November 5, 2008

## - Appearances -

**Plaintiff (Pro Se):**

Phillip Jerome Gardner
ID # 00-A-1955
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733-0116

**For Defendants:**

Steven N. Schulman
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway – 24th Floor
New York, NY 10271
(212) 416-8654